FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 24, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALEXANDRA P.,<br><br>               Plaintiff,<br><br>   v.<br><br>MICHELLE KING, Acting Commissioner of Social Security[1]<br><br>               Defendant. | NO. 1:24-CV-3106-TOR<br><br>ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE XVI OF THE SOCIAL SECURITY ACT |

BEFORE THE COURT is Plaintiff's Motion for judicial review of

Defendant's denial of her application for benefits under Title XVI of the Social

---

[1] Michelle King became the Acting Commissioner of Social Security on January

20, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Michelle

King is substituted for Carolyn Colvin as the defendant in this suit. No further

action need be taken to continue this under the Social Security Act, 42 U.S.C. §

405(g).

1    Security Act (ECF No. 9).  This matter was submitted for consideration without

2    oral argument. The Court has reviewed the record and files herein and is fully

3    informed.  For the reasons discussed below, the Commissioner's denial of

4    Plaintiff's application for benefits under Title XVI of the Social Security Act is

5    AFFIRMED.

## JURISDICTION

7        The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g),

8    1383(c)(3).

## STANDARD OF REVIEW

10        A district court's review of a final decision of the Commissioner of Social

11    Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

12    limited: the Commissioner's decision will be disturbed "only if it is not supported

13    by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

14    1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means

15    relevant evidence that "a reasonable mind might accept as adequate to support a

16    conclusion." *Id.* at 1159 (quotation and citation omitted).  Stated differently,

17    substantial evidence equates to "more than a mere scintilla[,] but less than a

18    preponderance." *Id.* (quotation and citation omitted).  In determining whether this

19    standard has been satisfied, a reviewing court must consider the entire record as a

20    whole rather than searching for supporting evidence in isolation. *Id.*

1    In reviewing a denial of benefits, a district court may not substitute its

2  judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

3  1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

4  rational interpretation, [the court] must uphold the ALJ's findings if they are

5  supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674

6  F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

7  ALJ's decision on account of an error that is harmless." *Id.*  An error is harmless

8  "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

9  *Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's

10  decision generally bears the burden of establishing that it was harmed. *Shinseki v.*

11  *Sanders*, 556 U.S. 396, 409-10 (2009).

12                    **FIVE STEP SEQUENTIAL EVALUATION PROCESS**

13    A claimant must satisfy two conditions to be considered "disabled" within

14  the meaning of the Social Security Act.  First, the claimant must be "unable to

15  engage in any substantial gainful activity by reason of any medically determinable

16  physical or mental impairment which can be expected to result in death or which

17  has lasted or can be expected to last for a continuous period of not less than twelve

18  months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's

19  impairment must be "of such severity that [he or she] is not only unable to do [his

20  or her] previous work[,] but cannot, considering [his or her] age, education, and

work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work").  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §

416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On February 6, 2017, Plaintiff filed for Title XVI supplemental security income with an alleged onset date of February 1, 2017.  Administrative Transcript ("Tr.") ECF No. 6 at 1627.  Plaintiff generally alleged she was disabled due to her fibromyalgia, scoliosis, right shoulder impingement syndrome, Meniere's disease, depressive disorder, anxiety disorder, post-traumatic stress disorder ("PTSD"), and obesity.  Tr. 1630–31.  Plaintiff's claim was initially denied by Administrative Law Judge ("ALJ") review on October 22, 2018.  Tr. 23–34.  On November 9, 2020, the United States District Court for the Eastern District of Washington remanded the decision for further proceedings.  Tr. 874.  Plaintiff's claim was once again denied based on the reasoning of an ALJ on April 27, 2022.  Tr. 738–62.  This Court then

1  remanded the matter, by mutual agreement of the parties.  Tr. 1696–97.

2       In the matter now before the Court, the ALJ held a telephonic hearing on

3  March 7, 2024.  Tr. 1626.  The ALJ then denied Plaintiff's claim on April 24,

4  2024.  Tr. 1626–57.

5       The ALJ noted that Plaintiff engaged in substantial gainful employment

6  during the third and fourth quarters of 2022, both as a cashier at a Fred Meyer in

7  Issaquah, Washington and in insurance sales at Aflac.  Tr. 1629–30.  However, the

8  ALJ determined that there has been a 12-month period during which Plaintiff did

9  not engage in substantial gainful activity.  Tr. 1630.

10      At step two, the ALJ found that Plaintiff's fibromyalgia, scoliosis, right

11  shoulder impingement syndrome, Meniere's disease, depressive disorder, and

12  anxiety were severe impairments.  *Id*.  However, her post-traumatic stress disorder

13  ("PTSD") and obesity were not demonstrated as severe in the record.  *Id*.

14      At step three, the ALJ found that Plaintiff's impairments, when considered

15  singularly or in combination, do not medically meet or equal the impairments listed

16  in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and

17  416.926).  Specifically, Plaintiff's fibromyalgia does not carry a restriction that

18  medically equals a listing, when considered alone or in combination with another

19  impairment.  Tr. 1631.  The ALJ found that Plaintiff's scoliosis does not meet the

20  requirements of Listing 1.15 or 1.16, her right shoulder impingement does not

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER
TITLE XVI OF THE SOCIAL SECURITY ACT ~ 7

equal Listing 1.18, and her Meniere's disease does not meet or medically equal the criteria of 2.07. Tr. 1631–32.

Regarding her mental impairments, the ALJ determined that Plaintiff does not satisfy the "Paragraph B" requirements, finding a moderate limitation in each of the listing criteria. Tr. 1632–33. As to understanding, remembering, or applying information, the ALJ credited Plaintiff's report that her impairments do not affect her memory, understanding, or ability to follow instructions, past presentation for mental examination, and ability to perform semi-skilled and skilled work. Tr. 1632. In interacting with others, the ALJ arrived at her decision by evidence that Plaintiff talks to others either on the phone or through her Xbox daily, shops for groceries, goes to the library, and utilizes public transportation. *Id.* Further, she denied any psychiatric symptoms when presenting for an emergency room visit after a fall while running in 2021, and was noted to have normal mood and affect. Tr. 1633. And when considering concentrating, persisting, or maintaining pace, the ALJ noted that Plaintiff reported she is able to handle stress "decently," and changes to routine, "very well." *Id.* Plaintiff was able to attend a camping trip with her family an hour and a half away from home and was able to routinely drive from Yakima to Issaquah, around two hours each direction, for her job with Fred Meyer. *Id.* Further, the ALJ did not find support for the "Paragraph C," criteria.

The ALJ determined that Plaintiff has the Residual Functional Capacity to perform the following:

> [L]ight work as defined in 20 CFR 416.967(b) except that the claimant can occasionally reach overhead with the right dominant upper extremity. The claimant can frequently handle or finger. The claimant can occasionally stoop, crouch, crawl, kneel and climb, including ladders, ropes or scaffolds or ramps or stairs. The claimant can have no concentrated exposure to vibration or hazards, including working at unprotected heights or around dangerous moving machinery. The claimant is capable of performing simple routine tasks with only occasional contact with the public, coworkers or supervisors.

Tr. 1634.

In making this determination, the ALJ found that Plaintiff's medically determinable impairments could reasonably cause some of the alleged symptoms, but the intensity, persistence, and limiting effects of the symptoms are not entirely consistent with the medical evidence and additional evidence in the record. Tr. 1636. The ALJ determined that Plaintiff's physical symptoms and mental impairments were not consistent with the longitudinal record. Tr. 1636, 1639. As part of this analysis, the ALJ considered the opinion evidence in the record pursuant to the requirements of claims filed before March 7, 2027. *See* 20 C.F.R. § 416.325.

As to the consultative exam given by Dr. W. Drenguis, MD, in May 2017, the ALJ gave it partial weight. Tr. 1643. After meeting with Plaintiff and reviewing her medical records, Dr. Drenguis found that Plaintiff does not need an

assistive device, such as a cane, and was able to drive herself to the appointment, she had the ability to independently take care of her personal and daily needs, was capable of climbing stairs and lifting 20 pounds, able to stand for 30 minutes before needing a five minute break, and had a physical exam within normal limits. Tr. 1642.  The ALJ found that his opinion was consistent with those of Dr. Steinman, L. Martin, MD, and T. Schofield, MD. Tr. 1643.  But additional information has become available since Dr. Drenguis conducted his exam, and thus his opinion is only given partial weight.

The ALJ gave partial weight to medical consultants Dr. Martin and Dr. Schofield.  Tr. 1650.  Based on decisions rendered in July 2017 and March 2020, Dr. Martin and Dr. Schofield reviewed Plaintiff's record and determined that she is able to lift or carry 50 pounds occasionally and 25 pounds frequently, that she can stand for 6 hours in an 8-hour workday, and can sit for about 6 hours in an 8-hour workday. Tr. 1644.  They found that she has some limitations and must avoid exposure to hazards and vibrations.  *Id*.  However, additional evidence has come to light since these exams took place, which denotes a greater restriction than either doctor indicated.

The ALJ gave the opinion of consultant examiner Dr. M Alto, MD, significant weight.  In July 2020, Dr. Alto reviewed the record and found that Plaintiff is able to lift or carry 20 pounds occasionally and 10 pounds frequently,

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE XVI OF THE SOCIAL SECURITY ACT ~ 10

she is able to stand and sit for 6 hours in an 8-hour workday, has some limitations, and must avoid concentrated exposure to vibrations. Tr. 1644. The ALJ found Dr. Alto's opinion persuasive because it was supported by a narrative explanation which describes the medical evidence she relied on and instances that were not consistent with Plaintiff's subjective complaints. *Id.* Further, the ALJ found the opinion consistent with the longitudinal record.

The ALJ found the opinion of Plaintiff's treating chiropractor, K. Briggs, DC, to be unsupported by the record and therefore it was given little weight. Tr. 1643. In June 2018, Dr. Briggs completed a two-page report stating that he had treated Plaintiff from May 3, 2016, to January 15, 2018. Tr. 1643. In his report, Dr. Briggs stated that Plaintiff has a limited range of motion in her cervical and lumbar spine, but did not think that work on a regular and continuous basis would cause the claimant to deteriorate. His report also contained his opinion that Plaintiff would miss more than 3 days of work per month, however this finding was a "guess." Tr. 1643–44. Additionally, his report stated that Plaintiff was making good progress and if she experienced a regression, she should return to care rather than pursue disability. Tr. 1644.

The ALJ found the opinion of treating source M. Hardison, ARNP, to be unsupported by the record and therefore unpersuasive. Tr. 1644. In June 2018, ARNP Hardison completed a two-page medical report questionnaire, stating that

1   she had treated Plaintiff since 2014 and since then had been diagnosed with

2   fibromyalgia, scoliosis, and depression, and was therefore required to lie down at

3   least twice per day for 20 minutes due to debilitating pain. *Id*. In October 2018,

4   ARNP Hardison completed a Washington State Department of Health and Human

5   Services form, indicating that Plaintiff was unable to meet the demands of even

6   sedentary work. *Id*. The ALJ determined that these findings were not only

7   contradicted by the longitudinal record generally, but with ARNP Hardison's own

8   findings. Tr. 1644–45.

9       The ALJ gave R.A. Cline, Psy.D. significant weight. Dr. Cline conducted a

10  evaluative exam, and found that Plaintiff had no limitation in the ability to

11  understand, remember and persist, and moderate limitations in the ability to adapt

12  to changes in a routine work setting, to ask simple questions or request assistance,

13  the ability to communicate and perform effectively in a work setting, the ability to

14  maintain appropriate behavior in a work setting, the ability to complete a normal

15  work day without interruptions from psychologically based symptoms, and the

16  ability to set realistic goals and plan independently. Tr. 1645. The ALJ gave

17  weight to Dr. Cline's opinion in part because it involved an in-person examination

18  of the Plaintiff and was consistent with the later in time opinion of Dr. Liddell. *Id*.

19      The ALJ gave the opinion of consultative examiner Dr. Liddell significant

20  weight. In May 2017, Dr. Liddell conducted an in-person psychological exam, and

found that Plaintiff did not have any obvious limitations in her ability to perform simple and complex tasks.  Tr. 1646.  The ALJ found that Dr. Liddell's opinion was consistent with Dr. Cline's findings, and with those of later in time opinions, including those of psychological consultant B. Eather, PhD, C. Covell, PhD, P. Kraft, PhD, and R. Flanagan, PhD, to which the ALJ assigned significant weight. Tr. 1646.

The ALJ assigned little weight to the opinions of Dr. S. Olmer, PhD.  Tr. 1646.  In 2018, Dr. Olmer completed a DSHS form, and in the check box portion of the findings, determined that Plaintiff had a marked limitation in her ability to complete a normal workday without interruptions from psychologically based symptoms, set realistic goals, and plan independently.  Tr. 1646.  In January 2020, Dr. Olmer conducted another evaluation and found that Plaintiff's only marked limitation was in her ability to ask simple questions, request assistance, communicate, and perform effectively in a work setting.  Tr. 1646–47.  The ALJ found Dr. Olmer's opinions unpersuasive because they were inconsistent with his own examinations and with the medical record.  Tr. 1647.

The ALJ also gave little weight to the opinion of Dr. H Petaja, PhD, because she essentially reviewed the reports from Dr. Olmer and Dr. Cline, and affirmed Dr. Olmer.  Tr. 1647.

The ALJ assigned little weight to the findings of D. Morgan, PhD.  In

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE XVI OF THE SOCIAL SECURITY ACT ~ 13

October 2023, Dr. Morgan completed a psychological evaluation and determined that Plaintiff had a number of marked limitations. Tr. 1647. The ALJ opined that this finding was not supported by Dr. Morgan's own in person exam, and inconsistent with the more persuasive opinions within the record. *Id*. For the same reason, the ALJ gave little weight to the opinion of Dr. Harmon, who reviewed and affirmed Dr. Morgan's opinion. Tr. 1648.

As to non-medical witnesses, the ALJ determined that statement given by B. Nicholson, Plaintiff's mother, was not consistent with the longitudinal record and therefore did not warrant a finding of additional limitation. Tr. 1648. And further found that Plaintiff's Global Assessment of Functioning scores throughout the record had no correlation with the "Paragraph B" criteria and therefore had limited evidentiary value. Tr. 1648.

At step four, the ALJ found that Plaintiff has no past relevant work. Tr. 1649. At step five, the ALJ found that Plaintiff is able to perform work in the national economy, considering her age, education, work experience, and residual functional capacity. Tr. 1649. At the hearing, the vocational expert determined that occupations such as: cleaner; price marker, and small products assembler I would be available nationally. Tr. 1649.

Given the above steps, the ALJ determined that Plaintiff was not disabled.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her application for Title CVI supplemental security income.  She raises the following issues on review:

I.     Whether the ALJ erred by not properly assessing the medical opinions.

II.    Whether the ALJ erred by improperly rejected Plaintiff's symptom testimony for reasons that were not specific, clear, and convincing.

ECF No. 9 at 2.

## DISCUSSION

### I.     The ALJ did not err in assessing the medical opinions on the record.

Plaintiff faults the ALJ for (1) not properly giving controlling weight to her treating sources, and instead crediting examining sources and (2) failed in assessment of other non-treating sources.

Because Plaintiff filed her claims prior to March 4, 2017, the Court applies the regulations as they existed at the time.  There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).  Generally, the opinion of a treating physician carries more weight than the opinion of an examining physician, and the opinion of an

1   examining physician carries more weight than the opinion of a reviewing

2   physician.  *Id.*  In addition, the regulations as they existed at the time gave more

3   weight to opinions that are explained than to those left unexplained, and to the

4   opinions of specialists on matters relating to their area of expertise over the

5   opinions of non-specialists.  *Id*. (citations omitted).

6       If a treating or examining physician's opinion is uncontradicted, an ALJ may

7   reject it only by offering "clear and convincing reasons that are supported by

8   substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

9   "However, the ALJ need not accept the opinion of any physician, including a

10  treating physician, if that opinion is brief, conclusory and inadequately supported

11  by clinical findings."  *Bray*, 554 F.3d at 1228 (internal quotation marks and

12  brackets omitted).  "If a treating or examining doctor's opinion is contradicted by

13  another doctor's opinion, an ALJ may only reject it by providing specific and

14  legitimate reasons that are supported by substantial evidence."  *Id*. (citing *Lester v.*

15  *Chater,* 81 F.3d 821, 830-31 (9th Cir. 1995)).  The opinion of a nonexamining

16  physician may serve as substantial evidence if it is supported by other independent

17  evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

18      *A.  Treating Sources*

19      Plaintiff first contends that the ALJ failed in rejecting Dr. Briggs' opinion by

20  not offering a specific and legitimate reason for doing so.  ECF No. 9 at 6.

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER
TITLE XVI OF THE SOCIAL SECURITY ACT ~ 16

Plaintiff argues that the ALJ did not consider her fibromyalgia and its waxing and waning nature when deciding that Dr. Briggs' findings on the form he filled out were not supported by the record. *Id*. In reviewing Dr. Briggs' form, the ALJ was correct in finding that it was contradictory and not supportive of a finding of disability. Dr. Briggs offered no reasoning to support the finding that Plaintiff would miss three days a week per month, and further qualified this statement by denoting that it is a "guess." Tr. 735. Further, he stated that he did not think that work would cause her condition to deteriorate and seemed to suggest that he did not have an accurate gauge on her current condition. He also wrote that she should return to his care if her physical symptoms were deteriorating, rather than seek disability. *Id*. The ALJ found his opinion to contradict not only itself, but the record as a whole, including the findings of Dr. Drenguis, who determined that even with Plaintiff's fibromyalgia, she is still able to function in the workplace. Tr. 393–97.

"An ALJ can satisfy the 'substantial evidence' requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (quoting *Reddick*, 157

F.3d at 725).  Here, the ALJ satisfied the substantial evidence standard, finding that Dr. Briggs' report is not consistent with itself or with a finding that Plaintiff is so functionally limited that she would be unable to work for three days a month, even when considering her fibromyalgia.

Next, Plaintiff argues that the ALJ erred because Dr. Briggs' report stated that Plaintiff "reported feeling better after chiropractic adjustment with improved range of motion."  Plaintiff asserts that this is harmful error because she could no longer afford her weekly visits with Dr. Briggs, and therefore it was impermissible for the ALJ to consider her lack of treatment with him as a basis for finding her not disabled.  ECF No. 9 at 7.  Further, she argues that her previously aggressive treatment schedule supports a finding of disability, as she was receiving adjustments 2-3 times weekly.  *Id*. at 8.  The Ninth Circuit has determined that when a plaintiff provides good reason for not taking medication, for such reasons as being unable to afford treatment, his or her symptom testimony may not be rejected for not doing so.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (internal citation omitted).  However, here, the ALJ was summarizing the findings of Dr. Briggs, and ultimately found that his opinion overall was inconsistent with the level of impairment he was endorsing, and further was seemingly using this statement to demonstrate the incongruity within Dr. Briggs' own report. Therefore, the Court finds no harmful error.

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE XVI OF THE SOCIAL SECURITY ACT ~ 18

Finally, Plaintiff argues that dismissing Dr. Briggs' opinion as unpersuasive based on the findings of Dr. Drenguis is insufficient, as one exam cannot account for the entire spectrum of fibromyalgia symptoms. ECF No. 9 at 8. The ALJ's finding were based on a host of Dr. Briggs' own records of Plaintiff's visits, and compared against the in person examination of Dr. Drenguis. Tr. 1644. Therefore, the ALJ offered specific reasons for finding Dr. Briggs' opinion unpersuasive, and this finding is supported by the record.

As to Mary Alice Hardison, ARNP, Plaintiff argues that the ALJ did not appropriately reject her objective medical findings. ECF No. 9 at 9. Though she is denoted as a treating provider, under the regulations as they existed when this claim was filed, ARNP Hardison was considered an "other source," and therefore the ALJ must give a germane reason for rejecting her findings. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir.2010) (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir.2001)). Here, the ALJ stated that ARNP Hardison's opinion regarding Plaintiff's marked limitation in her workplace ability on two forms in 2018 was given little weight because it did not align with her own longitudinal records, or with other examining sources. Tr. 1644–45.

In reviewing ARNP Hardison's records, a discussion of impairments such as fibromyalgia and scoliosis show up from time to time throughout the history of Plaintiff's treatment, but findings never have the debilitating effects she describes

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE XVI OF THE SOCIAL SECURITY ACT ~ 19

1  in the two forms filled out in 2018.  In most cases, ARNP Hardison was treating

2  Plaintiff for something other than pain or complications related to fibromyalgia or

3  scoliosis, and the impairments were listed in a running fashion on each medical

4  record.  See Tr. 699–706 (presenting for depression); 715–23 (presenting for cold

5  like symptoms); 1241–47 (presenting for a follow up to an emergency room visit

6  for stomach pain, mention of fibromyalgia flair up, but no substantive treatment or

7  prognosis documented).  As such, the ALJ presented a germane reason for

8  rejecting ARNP Hardison's 2018 findings that Plaintiff has a "marked," limitation

9  for her fibromyalgia, Meniere's disease, and hip dysplasia, and a severe limitation

10  for her scoliosis.  Tr. 1249.  ARNP Hardison never detailed in her notes such

11  limitations that would require Plaintiff to lie down at least two times every day and

12  require her to be absent for work more than four days a month.  Tr. 736–37.  As

13  such, the ALJ did not err in assigning her opinion little weight.

14      *B.  Non-Treating Sources*

15      Plaintiff argues that the ALJ improperly discounted two findings by

16  evaluating psychologist Dr. Steven Olmer.  First, Plaintiff argues that the ALJ's

17  reasoning for discrediting Dr. Olmer, that his opinion was not supported by his

18  own examination findings, is not specific and legitimate.  ECF No. 9 at 11.

19  "Where an ALJ does not explicitly reject a medical opinion or set forth specific,

20  legitimate reasons for crediting one medical opinion over another, he errs."

1    *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). "[A]n ALJ errs when he

2    rejects a medical opinion or assigns it little weight while doing nothing more than

3    ignoring it, asserting without explanation that another medical opinion is more

4    persuasive, or criticizing it with boilerplate language that fails to offer a

5    substantive basis for his conclusion." *Id*. at 1012-13. That being said, the ALJ is

6    not required to recite any magic words to properly reject a medical opinion.

7    *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (holding that the Court

8    may draw reasonable inferences when appropriate).

9       The ALJ assigned little weight to both of Dr. Olmer's reports because his

10   exam findings of Plaintiffs did not correlate with any "marked" limitation. Tr.

11   1647. This is both a specific and legitimate reason to discount the findings, as Dr.

12   Olmer provides little to no support for his determination that in July 2018 Plaintiff

13   had "marked," limitations in completing a normal work day without interruption

14   from psychologically based symptoms and to set realistic goals, and in January

15   2020 she had "marked" limitations in her ability to ask simple questions or request

16   assistance, communicate and perform effectively in a work setting, and maintain

17   appropriate behavior in a work setting. Tr. 1222, 1265. In both reports, Dr. Olmer

18   states that Plaintiff would have no more than a moderate limitation holistically, and

19   barriers to employment could be overcome with vocational training or services. *Id*.

20   Further, during the 2018 exam, Plaintiff appeared slumped and irritable, but Dr.

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER
TITLE XVI OF THE SOCIAL SECURITY ACT ~ 21

Olmer noted she was cooperative with clear and appropriate speech.  Tr. 1266.

And during the 2020 exam, Dr. Olmer noted that while Plaintiff was slumped in

appearance and depressed and tearful in affect, she was cooperative and oriented.

Tr. 1223–4.  The ALJ did not err in noting the inconsistency in Dr. Olmer's

reports, and therefore properly assigned them little weight.  *See Bayliss*, 427 F.3d

at 1216.

Plaintiff argues that the ALJ erred in discounting Dr. Olmer's opinion as

inconsistent with older opinions from other medical sources, and not further

crediting areas where she appeared depressed or anxious at later visits.  ECF No. 6

at 12.  An ALJ's decision will be disturb only when it, "contains legal error or is

not supported by substantial evidence."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th

Cir.2007) (citation omitted).  A court will uphold an ALJ's findings if they are,

"supported by inferences reasonably drawn from the record."  *Batson v. Comm'r of

Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir.2004); *see also Tommasetti v.

Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (internal citations omitted) ("The

court will uphold the ALJ's conclusion when the evidence is susceptible to more

than one rational interpretation.").

Here, the ALJ considered the entire longitudinal record and found that it did

not support Dr. Olmer's opinions.  The ALJ cited records by treating and

examining sources that did not find the level of impairment implied by Dr. Olmer's

opinion. See Tr. 1647. Some of these records predate Dr. Olmer's first opinion, such as a visit with ARNP Rutter in March of 2018 where Plaintiff presented with normal findings, and an earlier exam with Dr. Olmer in December 2017 where Plaintiff presented with no remarkable psychologically based impairments. Tr.714, 726. However, the Court notes that many of them fall in between his first and second opinion or were rendered after, such as her visit with ARNP Hardison in October of 2018, and her visits with ARNP Banks in November and December of 2019, and with PA-C Heath in April of 2020, where she presented with normal mood and affect, and visits in September 2020, October and November of 2020, and April 2021, also all finding Plaintiff to have normal mood and affect. Tr. 1231, 1247, 1260, 1448, 1459, 1476, 1579. The latest medical record cited by the ALJ was rendered in August 2022, where Plaintiff presented as anxious and tearful, but was cooperative with a normal thought content. Tr. 1848. Given the support provided by the ALJ, she did not err when considering Dr. Olmer's findings against other available medical sources.

Plaintiff also argues that the ALJ did not support her finding that Dr. David Morgan, PhD was unpersuasive. The ALJ discredited Dr. Morgan's opinion for many of the same reasons she discredited Dr. Olmer's opinion, and the Court affirms the reasoning. Dr. Morgan found Plaintiff to be markedly impaired in a number of areas on a check box form but does not support these findings within the

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE XVI OF THE SOCIAL SECURITY ACT ~ 23

1    rest of the evaluation he performed.  Tr. 1862.  In his report of her treatment

2    history, Dr. Morgan noted that Plaintiff has not been working with doctors or

3    taking medication for her physical or mental impairments, and though noted she

4    was anxious during her mental status exam, she also had normal speech, was

5    cooperative, and had normal affect.  Tr. 1860, 1863.  Further Dr. Morgan found her

6    to be "normal," in all categories listed, including abstract thought, insight, and

7    thought process.  Tr. 1864.  As such, the ALJ did not err in finding that Dr.

8    Morgan's opinion was inconsistent with his own report and with other medical

9    opinions in the record.

10    **II.    The ALJ properly rejected Plaintiff's symptom testimony by**

11    **providing reasons that were specific, clear, and convincing.**

12        An ALJ engages in a two-step analysis to determine whether a claimant's

13    testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must

14    determine whether there is objective medical evidence of an underlying

15    impairment which could reasonably be expected to produce the pain or other

16    symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).

17    "The claimant is not required to show that her impairment could reasonably be

18    expected to cause the severity of the symptom she has alleged; she need only show

19    that it could reasonably have caused some degree of the symptom."  *Vasquez v.*

20    *Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER
TITLE XVI OF THE SOCIAL SECURITY ACT ~ 24

1    Second, "[i]f the claimant meets the first test and there is no evidence of

2    malingering, the ALJ can only reject the claimant's testimony about the severity of

3    the symptoms if she gives 'specific, clear and convincing reasons' for the

4    rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting

5    *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).  "General findings are

6    insufficient; rather, the ALJ must identify what testimony is not credible and what

7    evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at

8    834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must

9    make a credibility determination with findings sufficiently specific to permit the

10   court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").

11   "The clear and convincing [evidence] standard is the most demanding required in

12   Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of*

13   *Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002))

14   Here, the ALJ determined that inconsistencies existed in the record which

15   undermined Plaintiff's reports of her symptoms, and as such, "[w]hile the evidence

16   suggests some limitations, the record as a whole does not reflect the level of

17   impairment alleged." Tr. 1636.  Plaintiff argues that the ALJ did not offer clear

18   and convincing reasons for rejecting her reports of fibromyalgia, including the

19   ALJ's reliance on an Urgent Care visit for COVID-19 symptoms in March 2020.

20   ECF No. 9 at 15.  And similarly argued that the ALJ inappropriately discounted

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER
TITLE XVI OF THE SOCIAL SECURITY ACT ~ 25

1   her mental impairments as mischaracterizing their cause and by not accounting for

2   areas in the record that Plaintiff appeared in distress, were not controlled by

3   treatment, and inappropriately crediting her daily activities. *Id*. at 15–19. Lastly,

4   Plaintiff argues that the ALJ impermissibly discredited Plaintiff's report of

5   attendance problems due to lack of evidence in the form of attendance records or

6   statements from previous employers or co-workers. *Id*. at 20.

7       The ALJ offered a plethora of clear and convincing reasons for rejecting

8   Plaintiff's subjective physical symptoms. "Contradiction with the medical record

9   is a sufficient basis for rejecting the claimant's subjective testimony." *Smartt v.*

10  *Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). Here, the ALJ noted areas in the

11  medical record that do contradict the level of debilitating pain and mental

12  impairment that Plaintiff alleges that she suffered, including areas where findings

13  were normal or where Plaintiff did not note pain or prior physical or mental

14  diagnoses. *See generally* Tr. 1636–9. In discussing the Urgent Care visit, the ALJ

15  referenced this entry for the purpose of showing that in the notes, Plaintiff did not

16  reference any prior health history. Tr. 1643.

17      The ALJ also referenced Plaintiff's daily activity and past work activities as

18  evidence that Plaintiff's subjective complaints are not aligned with the medical

19  record. Tr. 1640. A plaintiff's work history and daily activities may be used in the

20  overall analysis of a plaintiff's subjective testimony. *Thomas v. Barnhart*, 278

F.3d 947, 954 (9th Cir. 2002). Here, the ALJ found that Plaintiff's attested to activities such as weekly exercise, ability to assist her family with laying bricks, camping in a tent, selling her artwork, and vacationing in California during the summer of 2021 all lend to a finding of not disabled. Tr. 1640. Further, the ALJ noted that Plaintiff had the ability to maintain a job both near and a great distance from her home as support for the contention that she can function reasonably well. *Id*. Moreover, the ALJ did not commit harmful error in requesting attendance documentation to corroborate that Plaintiff was unable to maintain consistent work due to her inability to show up. *See* 20 C.F.R. § 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled. There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.").

As such, the ALJ did not commit harmful error in discounting Plaintiff's subjective statements about the level of impairment as a result of her physical and mental symptoms.

//

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Opening Brief (ECF No. 9) is **DENIED**.

2. Defendant's Response Brief (ECF No. 13) is **GRANTED**. The final

   decision of the Commissioner is **AFFIRMED.**

The District Court Executive is directed to enter this Order and Judgment

accordingly, furnish copies to counsel, and **CLOSE** the file.

DATED January 24, 2025.



THOMAS O. RICE
United States District Judge

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER
TITLE XVI OF THE SOCIAL SECURITY ACT ~ 28